## AVOIDANCE OF RELEASE UNDER CLAIM FOR PERSONAL INJURIES.

Common Pleas Court of Summit County.

### HARVEY CONRAD v. KELLER BRICK CO.*

Decided, April Term, 1907.

*Negligence—Proximate Cause Notwithstanding Contributory Negligence —Release—Avoidance of—Tender Back of Money Received is· a Prerequisite to a Suit for Damages.*

1. Irrespective of carelessness on the part of plaintiff in immediately stepping to a place of safety after removing an obstruction from a clay granulating machine operating several revolving knives, the negligence of the defendant's foreman, who had charge of the levers and was in a position to observe the plaintiff's danger, in starting the machine without other warning than "Look Out," and before the plaintiff had gotten away from his place of danger, constitutes the proximate cause of the injury.

2. A tender back of money received in release of liability for personal injuries is prerequisite to repudiation of the contract of release, and notwithstanding the release may have been obtained by the grossest fraud, the defendant must be put *in statu quo* before an action for damages for the injuries sustained can be brought.

*R. M. Smith* and *J. A. H. Myers,* for plaintiffs.
*Musser, Kimber & Huffman* and *L. B. Bacon,* contra.

Heard on motion for judgment on the pleadings.

Plaintiff alleges in his petition the incorporation of defendant under the laws of Ohio, its being engaged in the manufacture of brick at Cuyahoga Falls, Summit county, Ohio, and his employment by it as a common laborer for several years prior to and on August 9, 1905, the date of his injury.

"Plaintiff further says that among the machines and appliances in use in said plant, on said ninth day of August, 1905, and for a long time prior thereto were the following: a plug mill,

---

* Affirmed by the Circuit Court; reported, 12 C. C.—N. S., —; Circuit Court affirmed by the Supreme Court without report, *Conrad v. Brick Co.,* 80 Ohio State.

consisting of a metallic trough about two feet in width, two and one-half feet high, and eight feet long, open at one end within which a shaft extended the entire length thereof, having knives attached to said shaft in such manner that when said shaft was made to revolve by applying power to a large cog wheel fastened to said shaft just outside the closed end of said trough the clay deposited in said trough was ground up and forced toward and out of the open end of said trough and fell between two horizontal and parallel metallic rolls, which, when in operation, revolved together in such a manner as to still further crush and pulverize said clay. There was also an endless belt about eighteen inches wide and thirty feet long which passed over pulleys, one of which was situated just above the east edge of the trough of said plug mill near the closed end thereof, in such manner that when said belt was in operation clay could be and was conveyed upon the surface thereof to and deposited in said plug mill.

"Plaintiff further says that said plug mill and said rolls were so constructed as to act independently of each other, and were controlled in their action by means of two separate and distinct levers situated near the open end of said plug mill; that said belt could be operated only when said plug mill was in motion, but that said plug mill could be operated without operating said belt, and that the action of said belt was controlled by means of a third lever situated in close proximity of the levers which controlled the action of the plug mill and rolls as aforesaid.

"Plaintiff says that for a long time prior to said ninth day of August, 1905, he had ordinarily been employed during the forenoon of each day, in picking stones out of said plug mill and said rolls, which had been deposited therein along with the clay aforesaid, in order to prevent injury to said machines, and that he was so employed on the morning of said ninth day of August, 1905; and plaintiff says that in the doing of said work, or of any work pertaining to the operation of the machines and appliances aforesaid, he was under the control and direction of one William Keller, who had charge and general management of that portion of said plant in which said machines were located.

"Plaintiff further says that at about 11 o'clock A. M., on said ninth day of August, 1905, the said machines and appliances not then being in operation, said William Keller directed plaintiff to assist him in placing a new knife upon the shaft of said plug mill in place of one which had been damaged; that plaintiff thereupon did assist said Keller in placing said knife upon said shaft, and that as soon as the same had been placed thereon,

said Keller stepped to the lever which controlled said plug mill, as aforesaid, and started said mill in motion, while plaintiff remained in the position which he was then occupying, namely, with his right foot upon the west rim of the trough of said plug mill and his left knee upon the upper surface of said belt at the point where it passed over the pulley located just above the east rim of the trough of said plug mill, as aforesaid; in order that he might watch the operation of said mill; and plaintiff says that said Keller knew that plaintiff was occupying the position aforesaid at the time said Keller started said plug mill in motion, and further says that plaintiff was in plain view of said Keller during all the time which elapsed from that time until plaintiff was injured as hereinafter set forth.

"Plaintiff further says that soon after said plug mill had been started in motion, as aforesaid, he discovered a stone in the bottom of said trough near the upper or closed end thereof, and at once gave to said Keller the usual signal, by holding up his hand, to stop the operation of said plug mill; that said Keller thereupon did stop said mill; and that plaintiff, as soon as said mill was stopped, bent over and with his right hand reached down into the plug mill between the knife aforesaid and secured said stone, and had scarcely straightened up and tossed said stone to one side when said Keller called "Look out," and at the same instant started both said plug mill and said belt in motion by pulling the levers which controlled the same, said plaintiff's left leg was by the sudden starting of said belt, thrown into said plug mill and was crushed and mangled by the knives thereof to such an extent that it was necessary to amputate the same, and plaintiff was at once taken to the Akron City Hospital where said left leg was shortly afterward cut off at a point a few inches below the knee.

"Plaintiff further says that said Keller negligently and carelessly started said belt and plug mill in motion without being notified by the plaintiff that plaintiff was ready to have said Keller start the same, and without giving the plaintiff any sufficient notice that he was about to start the same, and without giving to plaintiff any notice whatever that he was about to start said belt in motion, or any opportunity to get off said belt before the same was started, and at a time when he and said Keller knew, or by the exercise of ordinary care would have known, that plaintiff was in a position such that serious injury would be likely to result to plaintiff from the starting of said belt and plug mill, as aforesaid.

"Plaintiff further says that the injuries sustained by him, by being caught and mangled in said plug mill as aforesaid, were

caused wholly by the negligence of the defendant and its agent, the said William Keller, as above set forth.

"Plaintiff further says that as a result of the injuries received by him as aforesaid he has lost his foot and the lower portion of his left leg from a point a few inches below the knee; that at the point where said leg was amputated the same is yet sore and un-healed; that by reason of said injuries his general health has been seriously and permanently impaired; that by reason of said injuries he has been made to endure severe and continuous physical and mental pain, and will be compelled to endure such pain for an indefinite period of time in the future; that because of said injuries he has required and yet required constant care, nursing and attention, and will continue to require such care for a considerable period of time in the future; that at the time of receiving said injuries he was fifty-five years of age and was in good health, and was, and for a long time prior thereto had been, steadily employed and earning wages of $1.70 per day; and that since receiving said injuries, and by reason thereof he has been unable to perform any work whatever, and has thereby already suffered a loss in wages amounting to $130; that by reason of said injuries he will be unable hereafter to perform his usual, or any other ordinary labor; and that in all the premises he has sustained damages in the sum of $20,000, for which he prays judgment against defendant."

Defendant answering the above petition after admitting its incorporation and business and its employment of plaintiff as stated, says:

"It further admits that on said August 9, 1905, and for a long time prior thereto, it has had among the machines and appliances in its said brick plant a machine known as a granulator, but incorrectly called in plaintiff's petition a 'plug mill,' and that the description contained in plaintiff's petition of said granulator or machine is substantially correct; that connected with said granulator and used therewith was an endless belt of about the width and length as set forth in plaintiff's petition, and that the same was used for the purpose of conveying clay or earth to said granulator.

"This defendant further admits that on said August 9, 1905, and for a long time prior thereto, plaintiff had ordinarily been employed during the morning of each day in picking stones off of said granulator and the rolls connected therewith, and which stones had been deposited therein along with the clay aforesaid, in order to prevent injury to said machines.

"This defendant admits that plaintiff, at the date set forth in his petition, stood with his right foot upon the west rim of the trough of said granulator with his left knee upon the upper surface of said belt, at or near the point where it passed over the pulley located just above the east rim of the trough of said granulator, as described in plaintiff's petition. This defendant admits that plaintiff's left leg was caught in said granulator and the same was injured, necessitating amputation thereof a few inches below the knee, and that by reason thereof plaintiff suffered physical and mental pain, and that by reason of said injury, plaintiff required care, nursing and attention, and that at said time plaintiff was fifty-five years of age, in fairly good health and was earning the ordinary wages for men of his capacity to-wit, about the sum of $1.70 per day.

"For a second defense to plaintiff's petition, defendant here refers to and makes a part thereof, all the allegations, averments and denials of its first defense, as fully as if again and at length herein rewritten, and, further answering and for a second defense, says that if this defendant is chargeable with the negligent acts complained of in plaintiff's petition, a fact which this defendant wholly denies, nevertheless the said plaintiff ought not to maintain his action for that, after the injury received by the plaintiff, he permitted and requested the defendant to pay the expenses incurred by plaintiff in and about the attention, care and nursing, including medical and surgical services incident to said injuries, and amounting to, in the aggregate, over $184; and that thereafter, to-wit, on or about September 8, 1905, the plaintiff also received and accepted from this defendant, as a full and complete settlement and release for all claims for damages and expenses against this defendant and arising from such injury, the further sum of $275 with full knowledge upon the part of plaintiff that he was not bound to accept the same, but that in so doing he released this defendant from all claims for damages against it arising from the injuries set forth in his petition, and thereupon and in consideration of the payment of this defendant of said sums and on or about the said September 8, 1905, he executed and delivered to this defendant his certain receipt and release in that behalf, in writing, as follows, to-wit:

"'In consideration of the sum of two hundred and seventy-five dollars ($275) to me in hand paid by the Keller Brick Company of Cuyahoga Falls, Ohio, I do hereby release and forever discharge said the Keller Brick Company from any and all actions, claims and demands for, upon or by reason of any damages, loss or injury which heretofore have been or which hereafter may be sustained by me in consequence of any injury which

I received at the plant of the Keller Brick Company, Cuyahoga Falls, Ohio, on or about the ninth day of August, 1905. It is further agreed and understood that the payment of said sum of two hundred and seventy-five dollars ($275) is not to be construed as an admission on the part of said the Keller Brick Company of any liability whatever in consequence of said accident or the injury to me.'

"[Duly verified and witnessed.]

"And this defendant avers that by reason of the facts and things set forth in this, its second defense, plaintiff released this defendant from all liability to him by reason of the injuries complained of in this petition, and the plaintiff is now, by reason of the matters and things set forth in this, ist second defense, estopped from asserting any claim for the matters and things complained of in this petition against this defendant.

"For a third defense to plaintiff's petition, this defendant says that the injuries received by plaintiff were caused by his own carelessness, negligence and want of ordinary care; that this defendant gave plaintiff notice of its intention to start said machinery and belt and that plaintiff was negligent and careless in failing to remove his limbs and body from said belt after receiving such notice, and that he was guilty of gross carelessness and negligence in placing his right foot upon the side of said mill and in placing his left foot and knee upon said belt at the time and in the manner described in plaintiff's petition, and that whatever injury plaintiff received as in his petition set forth, his own carelessness, negligence and want of ordinary care contributed thereto as herein set forth."

Plaintiff in reply to such answer "denies each and every allegation, averment and statement in said amended answer contained, except those which are hereinafter admitted to be true or qualified.

"For a further reply to the 'second defense' of said amended answer, plaintiff denies that he permitted and requested the defendant to pay the expenses incurred by plaintiff in and about the attention, care and nursing, including medical and surgical services incident to said injuries, and says that if defendant has expended any sum of money whatever, in payment for nursing, care, attention or medical services furnished to plaintiff, incident to said injuries, as to which plaintiff has no knowledge, such expenses were contracted for and incurred by defendant, and not by plaintiff, and that plaintiff was never consulted by defendant in regard to the incurring of said expenses, or to the payment thereof.

''Plaintiff further denies that thereafter, to-wit, on or about September 8, 1905, plaintiff also received and accepted from defendant as a full and complete settlement and release for all claims for damages and expenses against defendant and arising from such injury, the further sum of $275, and denies that he ever received said sum, or any sum whatever, from defendant on account of said injuries, and further denies that by reason of the payment to him of said sum of $275 he released defendant from all claims for damages against it arising from the injuries set forth in his petition.

''Plaintiff admits that on said eighth day of September, 1905, the sum of $275 was paid to him, and that he signed what he understood to be a receipt for said payment. But plaintiff denies that said payment was made to him by the defendant, and denies that he ever knowingly signed any paper writing which released, or purported to release the defendant from liability on account of the injuries received by plaintiff as set forth in his petition. And plaintiff says that if he signed the receipt and release of which defendant's amended answer purports to set forth a copy, he signed the same without understanding the true import and meaning thereof, and his signature thereto was obtained by deceit and fraud practiced on him, as hereinafter set forth.

''Plaintiff says, that on the eighth day of September, 1905, he was yet detained at the Akron City Hospital by reason of the injuries received by him as set forth in his petition, and was in a weakened physical condition as a result of said injuries; that his mental faculties have ever been dull and weak, and on said eighth day of September, 1905, were more than ordinarily dull and weak by reason of his weakened physical condition and of the suffering which he had been, and then was, compelled to endure; that about the middle of the forenoon on said eighth day of September, 1905, he was sitting propped with pillows, in a wheel chair in one of the rooms of said hospital, when word was brought to him by one of the hospital attendants that some person desired to see him in an adjoining room; that he thereupon wheeled his chair into the adjourning room, and met there a gentleman whom he had never seen before, who introduced himself to plaintiff as a Mr. Bacon, and asked plaintiff if plaintiff's name was Conrad, and if plaintiff was the person who was injured at the plant of the Keller Brick Company, to which questions plaintiff gave affirmative replies. Said Bacon then asked some further questions as to how the accident occurred, and as to how much wages plaintiff was getting at the time the accident occurred, and then appeared to do some figuring upon a paper,

after which said Bacon stated to plaintiff that he represented an insurance company with which the Keller Brick Company had an arrangement or contract in force at the time of the accident whereby the employes of said brick company were insured to some extent against accidents, and that by reason of such arrangement, plaintiff was entitled to receive from the insurance company which he, the said Bacon, represented, insurance benefits amounting to the sum of $275, and further said that he would be ready to pay over to plaintiff that amount of money in payment of such benefits, as soon as he could prepare the proper receipt for such payment, if plaintiff were willing to receive said amount in full payment of the insurance benefits so due to him, and to sign a receipt therefor, which plaintiff then expressed his willingness to do.

"Plaintiff further says that said Bacon thereupon left the hospital saying that he would prepare a receipt and return in a short time, would then pay over the money; that said Bacon did return about an hour later, bringing with him a gentleman who was also a stranger to plaintiff and at once handed to plaintiff said sum of $275, and a paper which, as plaintiff remembers, appeared to be typewritten, and which said Bacon said was a receipt of which he had spoken, and which said Bacon thereupon requested plaintiff to sign, at the same time indicating to plaintiff the places in which he wished plaintiff to sign the same, and plaintiff says that he did thereupon sign said paper in the places so indicated to him.

"Plaintiff further says that after signing his name to said paper as aforesaid, the gentleman who came with Mr. Bacon asked plaintiff as to whether or not plaintiff acknowledged his signing of said paper to be his free act and deed, but says that no question as to whether or not he had read said paper was either asked of, or read to him, and that he did not make any statement to said gentlemen, or either of them, to the effect that he had read said paper; that he did not read said paper, and could not read the same as he has never learned to read even the simplest words without assistance; and that he signed said paper relying upon the statements made to him by Mr. Bacon as above set forth, believing that said paper was simply a receipt for the payment to him by an insurance company of insurance benefits to which he was entitled.

"Plaintiff further says that at and prior to the time of the payment to him of said sum of $275, he was not informed by anything said or read to him or in any manner whatever that the Keller Brick Company was making such payment, or that said payment was intended to have any effect whatever in the

way of releasing said brick company from liability for the injuries which plaintiff had received, or that the paper which plaintiff signed as aforesaid purported to release said brick company from any liability for such injuries; and further says that if he had been informed that said payment was being made for the purpose of making settlement of plaintiff's claim against said brick company, on account of said injuries, or that the paper which plaintiff signed as aforesaid purported, or was intended, to release said brick company from any liability to plaintiff, plaintiff would have refused to accept said money, and would have refused to sign said paper; that his acceptance of said money was induced and his signature to said paper was procured by the deceit and fraud practiced upon him, as aforesaid.

"Plaintiff therefore denies that the receipt by him of said sum of money and the signing by him of said alleged release under the circumstances above described, in any way operated to release defendant from its liability to plaintiff or to estop plaintiff from ascertaining his claim for the matters and things complained of in his petition against defendant."

The jury duly impanneled and sworn, the defendant moved the court for a judgment on the pleadings.

DOYLE, J. (orally).

The solving of this matter is not unattended with difficulties by any means, and this is a pretty short time to give to settling such important matters as these. An inferior court has too much to do to consider the matter long and delay other parties who are on hand to have their matters adjudicated.

I have taken up the matter first on the two questions as to whether there is a cause of action stated in the petition, and whether there are allegations in the petition showing that there was contributory negligence on the part of the plaintiff.

I am satisfied that there are facts set up in the petition sufficient to constitute a cause of action. Of course there are allegations there showing what, to my mind, is negligence on the part of this plaintiff in a certain way. I regard it as careless for the plaintiff, after he got the stone out of this trough where the shaft with the knives placed on it revolved, to keep his knee on the belt. It would have been a wise precaution to have immediately got out of that position.

But the defendant's foreman had control of the levers which started that machinery. So far as the allegations of the petition are concerned, he knew this man was occupying that position; he was in a position where he could see whether the plaintiff had got off or removed himself from that position, and with no other warning than a call and pulling of the lever, he started the machinery and brought on the accident. We must assume for the purposes of this motion that these allegations are true, because we are passing on the sufficiency of the petition, and not taking into consideration the facts that may be proven.

The facts set out in this petition, however, give us a situation of the case under which it seems to me that it, was the duty of the defendant's foreman to have seen that the plaintiff was out of danger before he pulled the lever. So that his negligence was the proximate cause of the injury. If that were the only matter in this case, I should be disposed to let the case go to the jury.

Now I come to the question whether it was plaintiff's duty, before making the defense that he does to the affirmative matter set out in the second ground of defense of the defendant, to have tendered back the money that was paid him. The reply is very skillfully drawn, there is no question about that. A master hand has drafted the reply, and I doubt whether the like of it can be found anywhere in the books. I don't believe any other reply could have been made to make more trouble for the defendant than that reply.

The defendant, in its second ground of defense, perhaps might have got along without setting out the writing, but still it isn't necessary to go into that. It has set out that there was a full settlement, for the sum of $275, and says that thereupon, in consideration of the payment by this defendant of said sum, and on or about September 8, 1905, he executed and delivered to this defendant his certain receipt or release in that behalf in writing as follows:

"In consideration of the sum of $275, to me in hand paid by the Keller Brick Company of Cuyahoga Falls, Ohio, I do hereby release and forever discharge said the Keller Brick Company from any and all actions, claims and demands for, upon or by

reason of any damages, loss or injury which heretofore have been or which hereafter may be sustained by me in consequence of any injury which I received at the plant of the Keller Brick Company, Cuyahoga Falls, Ohio, on or about the ninth day of August, 1905.''

Now that's the defense. The liability, if any, that the Keller Brick Company owed to the plaintiff they claim was settled and adjusted by that instrument—that settlement, and evidenced by that instrument.

The reply contains a general denial of each of the allegations in that answer, not admitted to be true or qualified. It is broad enough to cover the allegations there of the execution of that instrument.

Now as to the qualification. He denies in this reply that he received and accepted from the defendant as a full and complete settlement and release for all claims for damages and expenses against defendant arising from said injury, for the further sum of $275, and so forth, while he admits that on the eighth of September, 1905, the sum of $275 was paid to him, and that he signed what he understood to be a receipt for said payment, he denies that said payment was made to him by the defendant, or that he ever knowingly signed any paper writing that released or purported to release the company from liability for the injury received by plaintiff as set forth in his petition.

The plaintiff says that if he signed the receipt and release, and by the way, there is no denial of the signing of this paper, except that general denial by this reply, plaintiff says that if he signed the receipt and release of which defendant's amended answer purports to set forth a copy, he signed the same without understanding the true import and meaning thereof, and his signature thereto was obtained by deceit and fraud practiced upon him as hereinafter set forth. He doesn't deny the probability or possibility of the thing existing, but says that if there existed that thing, why that then some other thing is connected with it. Something necessarily follows from its existence. He admits that there is a probability that he did, and there isn't any denial that he signed it, but if he did sign it then it was signed under the following circumstances, which he proceeds to relate.

Now what follows is a defense to this settlement evidenced by this written instrument set out in the defendant's answer. He says, that if such a document is in existence, this is his defense to it. I don't see that it makes a different situation, than if he had come out openly and said that he did sign the instrument set forth in defendant's answer, but that he signed it by reason of the fraud perpetrated upon him and then proceeded to set up these things which constituted the fraud.

So that it is different from the situation where he might have pleaded in his reply that this same indemnity company had paid him that money, and that they had paid it to him for a certain purpose—I don't care what that purpose might be—and had ignored the Keller Brick Company entirely, perhaps set out that these people had paid this money on account of some liability that they owed to him. He might have had accident insurance of his own and received that money from them. The indemnity company might have provided him indemnity upon premiums paid by the defendant in fact and settled with him.

That isn't the situation made by this answer and this reply. There isn't any positive assertion of any money paid by a volunteer. The situation is, that if he signed the paper set forth in this answer of the defendant, it was signed by reason of those representations. That takes us back to the answer, and the answer doesn't show anything except that a settlement was made with the defendant.

You have enough set forth in the reply to nullify that settlement if it was gotten by fraud. *Manhattan Life Ins. Co.* v. *Burke,* 69 Ohio St., 294, and *Gould* v. *Bank,* 86 N. Y., 75, 79, which are argued out at length, and with good reason would compel you, before you can repudiate that agreement, even for the grossest kind of fraud, to put the parties in *statu quo,* so that I don't see any way out of it but to find that the defendant upon the pleadings as I have them here, would be entitled to judgment because of there having been a failure to put the defendant back in the position in which it was before it perpetrated this alleged fraud upon plaintiff.

I know that upon that reply a strong argument can be made, because it has been made to support the position of the plaintiff.

If a reviewing court find his position correct, it is better that the reviewing court decide the matter before this court goes through a two or three days trial. I will therefore sustain the motion of the defendant and render judgment on the pleadings in favor of the defendant.